Green, J.
delivered the opinion of the court.
In this case the defendant filed a demurrer to the bill of complaint, which was overruled by the court, and they were ordered to answer. No answer having been filed within the time allowed by the court, the bill was taken pro confesso. MThen the cause was about to be heard, the parties entered into the following agreement.-
“In this cause it is agreed that an account may be ordered to be taken the same as if an answer was filed; and it is also agreed that the defendants may prove by competent testimony before the clerk aud master any matter of defence to the said bill in the same manner, and to have the same effect, as if an answer were filed relying on such matter of defence. The force of the pro confesso is not,however to be done away, except so far as it is done away by proof on the part of said corporation.”
The account was taken, and testimony, not relevant to the account, but affecting the right of the complainants to a decree for any amount, was taken before the master and reported to the court-where~ipon the bill was dismissed.
The first question is, what construction must be given to this agreement of the parties?'
The com plainants contend that the right of the defendants to produce testimony before the master, was confined to evi-dence in relation to [the items of the account the master was ordered to take; while on the other hand the defendants insist they were permitted to take any testimony, which would have been competent evidence in the cause, if an answer had been filed.
*604 Th'e true interpretation of this agreement is not without difficulty. The complainants contend with great plausibility, that as the matter referred to the master was the question of account, testimony tobe taken before him, must be understood to refer exclusively to that subject. And the defendants urge with great force, that the comprehensive words of the agreement, permitting them to prove by competent testimony any matter of defence to the said bill in the same manner, and to have the same effect, as if an answer were filed, relying on such matter of_defence,” authorised the testimony in question to be taken.
We do not doubt, but that the gentleman who signed this agreement, on each side, understood it at the time, as they now contend ic ought to be construed. We however think with the defendants, that the testimony is admissible under the agreement. If an answer had been filed, denying that Avery and Ward had ever completed the water works, and" denying that the'corporation had ever taken'them- into possession, using and occupying them, it is clear that the testimony of these witnesses would have been relevant to such issues and consequently it must be competent, under the agreement.
2. We next come to consider whether upon the bill and proof, the complainant is entitled to a decree.
The first covenant contains the following stipulation: “If at any time after the completion of said works, the same shall get out of repair, and so remain for the space of ninety days, so that the town is not supplied with water as is herein provided, then the mayor and alderman for the time being, may take possession of said works, in behalf of the corporation and use, and occupy the same, as their own, and shall only in such case, be liable to pay Avery and Ward; the one half of the amount by them expended in the construction thereof, over and above the five thousand dollars advanced as above stated.”
The bill alledges “that after the completion of said works .on the 1st January, 1828, the said Avery proceeded to supply,. and did supply the said town of Nashville according to contract with water without .intermission, except for the necessary repairs of machinery, until about the 9th day of *605 March 1830, when the building attached to said works, and the said saw mill, were destroyed accidently by fire, and the machinery of the establishment upon which the supply of vra-ter depended were thereby rendered useless. To repair said works w'ould have required a large sum of money, and the said Avery was too poor to raise it, and the said mayor and aldermen never offered to make him any further advances, consequently said works have never been rebuilt or repaired by the said Avery. Your orator further states that the said mayor and aldermen have taken possession of said lot of land, and now have and enjoy the use and occupation thereof} having dispossessed the tenants heretofore in possession by action of ejectment.”
The first witness, David M. Moore says, he always considered the water works a failure; that the reservoir was a complete hoax; that the pipes were very indifferent, insomuch that he was continually repairing them, and that before the buildings were burned, “the works did not go more than half the time.”
Edwin Dibrell says, the water works were so complete a failure and disappointment, that the corporation never attempted to rebuild them, but constructed a different system altogether.
The condition of the covenant, which was to make the corporation liable for half the expense of erecting the water works, depended upon the taking possession of and using and occupying them as their own. And the question now is, did they do so?
We are of opinion they did not.
True, it is stated in the bill, that the “mayor and aldermen have taken possession of said lot of land, and now have, and enjoy the use and occupation thereof;” and this averment is not disproved, and is therefore to be taken as true. It was upon this averment in the bill that the court, 10 Yer. 179, overruled the demurrer. Nothing appearing to the contrary, the court was of opinion, that possession of the lot of land, upon which the machinery was erected, ought to be regarded as possession of the water works. But now, it appears from the proof that the water works were worthless, *606 could not have been made to answer the ends of their ereo tion^ and were abandoned alike by the corporation and by Avery. The statement in the bill, corroborates this proof. The complainants say, “to repair said works would have required a large sum of money, and the said Avery was too poor to raise it: and the said mayor and aldermen.-never offered to make him any further advances, consequently, the said works have neither been rebuilt or repaired by said Avery.”
This statement must be understood, in connexion with the evidence in relation to the worthlesss character of the works, as ah admission that Avery had abandoned all idea of repairing them, before the corporation took possession of the lot of land. They were not repaired by Avery says the bill, in consequence of the want of money, which he was too poor to raise. They were not repaired by the corporation says the proof, because they were worthless, and they determined to construct works on a different system.
Upon the whole, it is clear that the corporation did not take possession, use and occupy the works as their own. This was the condition upon which their liabilities was to depend. The fact, that they may have had possession of them, as incidental to the possession of the land, where the machinery, pipes and reservoir, were situated, does not of itself createtheir liability.
It was their use and occupation of them, as waterworks, astheir own, thus taking a benefit from them, that was to entitle Avery to half their cost. This, it cannot be pretended they have done, and therefore, we think the bill must be dismissed.
Affirm the decree.